# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2925

July 24, 2006

Tobey M. Daluz
Ballard Spahr Andrews &
Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801

Vincent J. Marriott, III
Ballard Spahr Andrews &
Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Counsel for Defendants

Michael R. Lastowski
Christopher M. Winter
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801

Whitton E. Norris, III
Davis, Malm & D'Agostine
One Boston Place
Boston, MA 02108

Counsel to Plaintiff

**Re: Clean Harbors Environmental Services, Inc. v. Arkema, Inc.,
Helen Kramer Landfill Superfund Site Group, and Ballard Spahr
Andrews & Ingersoll, LLP
Adv. Proc. No. 05-50474 (PJW)**

Dear Counsel:

This is with respect to the Defendants' motion for
summary judgment (Doc. # 20). While I find the Defendants' motion
papers to be more persuasive than the Plaintiff's, given the strict
requirements of Rule 56(c), I am not disposed to rule on the motion
at this time. The record on this dispute is very extensive and in
my opinion there is more to consider than that set forth in the
summary judgment motion papers. I believe a more appropriate
course of action is to allow a limited time for any needed

discovery and to set a trial date for this dispute.  In my view there is not much need for discovery as there are plenty of documents and statements already in the record that should provide the answer to this dispute.

In addition to reviewing the summary judgment motion papers (Adv. Doc. ## 21, 24 and 25), I have again reviewed the papers related to the Defendants' prior motion in the chapter case to enforce and interpret the sale order (Doc. ## 7774 and 7922), the transcript of the June 17, 2002 sale hearing (Doc. # 5003), the pleadings on Defendants' motion to dismiss Count III (Adv. Doc. ## 5, 7, 8 and 11), and other filings in the chapter case that I deemed relevant.  I find that numerous relevant documents, statements and arguments are spread throughout these extensive pleadings and exhibits that should be addressed in an organized and comprehensive pre-trial order.

For the purpose of giving the parties the benefit of some of my thinking on this dispute and possibly aiding in its resolution, I set forth below some observations I have at this time.

(1) As reflected in my October 19, 2005 Memorandum Opinion (Adv. Doc. # 15) on the Defendants' motion to dismiss Count III of the complaint, I have already noted numerous writings and statements that support the conclusion that Clean Harbors did assume the liability that the Defendants assert here.

(2) In the Memorandum Opinion I stated the following:

> The Defendants represent that "[t]he Superfund Remediation Liability [currently at issue] was Safety-Kleen's <u>only</u> liability in connection with the Kramer Superfund Site . . . ." And, "[t]here is no other Kramer Superfund Site liability to which Paragraph O and Exhibit A could have been referring." (Adv. Doc. #5, p. 23) (emphasis in original). Clean Harbors does not challenge this factual representation. (Adv. Doc. # 15, p. 11.)

I am not aware that this point has otherwise been addressed in the summary judgment motion papers so I assume this is an undisputed fact.

(3) In its memorandum in opposition to the summary judgment motion, Clean Harbors asserts that certain predicate facts regarding the subject liability are in issue. In its reply memorandum, the Defendants appropriately point out some infirmities of those assertions (Doc. # 25, pp.4-5). My best recollection is that many of the predicate facts are in the record and not subject to challenge. However, this is one of the reasons why I believe proceeding to trial is a better course of action. There is a lot of history to this dispute which is already in the record but which needs to be organized and set forth in a concise manner. I believe the best approach to this is to have a pre-trial order which can once and for all articulate what is undisputed and what is disputed.

(4) With its opposition memorandum, Clean Harbors furnishes the affidavit of Mr. Norris and Mr. McKim. Putting aside for the

moment the Defendants' argument that these affidavits cannot be used to show an intent that overrides the objective statements in the relevant documents, I have several comments on these affidavits.

(a) Mr. Norris states that prior to the June 17, 2002 sale hearing, he met with Mr. St. Clair (Safety-Kleen's counsel) to discuss the objections of the EPA and a representative of the Texas environmental authority.  According to Mr. Norris: "Mr. St. Clair then showed me a schedule of known superfund sites for which SK was claimed to be liable, which schedule eventually became Exhibit A to the order approving the sale."  (Norris Aff. ¶ 28.)  Of course, Schedule A includes in its listing the Helen Kramer Landfill site out of which the present disputed liability arose.  Mr. Norris then consulted with Jonathan Black regarding the superfund liabilities.  (Norris Aff. ¶ 30.) (It is my understanding that Mr. Black, another attorney not associated with Mr. Norris, was engaged by Clean Harbors to investigate Safety-Kleen's superfund liabilities.)  Mr. Norris then states:

> "<u>After confirming with Mr. Black that the schedule provided by Mr. St. Clair was accurate and complete</u>, Mr. Black reported to me his estimate of the aggregate of SK's known superfund liability.  We did not discuss the amount of possible liability of SK with respect to any particular site on Mr. St. Clair's list.  The identity of the defendants in the present case, or the fact that such defendants had claims against SK, were unknown to me at that time." . . . Mr. McKim . . . agreed to authorize a change in the draft of

> the draft of the order approving the sale that
> eventually was incorporated in paragraph O of
> the order approving the sale." (Harris aff. ¶
> 31-32.) (Emphasis added.)

This recitation by Mr. Norris raises two points in my mind at this time:

(i) Clean Harbors having determined that the Exhibit A schedule was accurate and complete and that it had an estimate of the aggregate superfund liabilities, it is difficult to accept Clean Harbors' position at this time that the paragraph O amendment does not encompass the liability to the Defendants. Alternatively, it can be argued that the position set forth by Mr. Norris in his affidavit suggest that Clean Harbors pursued the transaction without sufficient due diligence of the liabilities it was assuming.

(ii) In a prior pleading, Clean Harbors submitted a November 28, 2003 affidavit by Mr. Black. In discussing the subject site, Mr. Black stated: "I had, prior to the sale hearing and several times thereafter, reported to Clean Harbors and [Davis, Malm & D'Agostine] that such obligations of Safety-Kleen might not be obligations to a governmental entity under CERCLA." (Doc. # 7922, Ex. H, ¶ 10)(Emphasis added.) If Mr. Black is to be believed and in light of the presumably undisputed fact noted in paragraph 2 above, then one could conclude that Mr. Norris' affidavit does not present a complete picture. More importantly, on the record

before me it would certainly not be difficult for a trier of fact to conclude that Schedule A reflects a list of environmental liabilities some of which, including the Helen Kramer Landfill site, were known by Clean Harbors prior to the sale hearing as being liabilities owed to entities other than governmental agencies.

> (b) In his affidavit, Mr. McKim recites that he was
>
>> particularly concerned about third party environmental liabilities, based upon my years of observing SK's competitive practice of underbidding CHI by using low cost disposal facilities that employed operational standards that CHI did not approve of and consequently refused to ship any of its customer waste to. According, my reticence to enter into a transaction with SK was based upon my presumption that SK likely had potential exposure for superfund liability that could not be accurately estimated and for which CHI would inherit liability if it entered into a proposed transaction. (Mr. McKim aff. ¶ 6.)

Notwithstanding that concern, as reflected in Mr. Norris' affidavit, Clean Harbors elected to proceed with a long list of sites and entities that could expose Clean Harbors to substantial environmental liabilities and relative to which it received expert advise from Mr. Black. Thus, one could easily conclude that Clean Harbors knew what it was buying into. In the trial of this matter, if Clean Harbors intends to introduce testimony of Messrs. Norris and/or McKim on the matters set forth in their affidavits, then it seems to me that the documents discussed at pp. 18-20 in my Memorandum Opinion are relevant. The Defendants may wish to call

the authors of those documents as witnesses.  This is another reason for proceeding to trial with a well organized and comprehensive pre-trial order.

(5) In its opposition memorandum, Clean Harbors argues that it did not agree with various representations of liability as stated by Safety-Kleen's counsel at the June 17, 2002 sale hearing. While there was some acknowledgment on the record as to the absence of complete agreement between Safety-Kleen and Clean Harbors on some issues, Mr. McKim made no effort at the hearing to articulate those differences, particularly as to any distinction between government and private party environmental liabilities.  Nor did Clean Harbors' counsel make any statement on the record at the June 17, 2002 hearing regarding any concern or misunderstanding about the breadth of the liabilities being assumed by Clean Harbors as expressed by Mr. St. Clair.  Indeed, at the June 17, 2002 hearing, in proffering the direct testimony of Mr. McKim, Mr. Norris stated:

> While we do not agree in every single instance
> with all the valuation -- each valuation
> Safety-Kleen might have put on a particular
> liability, we may have a different one, with
> all the puts and calls within that, we still
> came back to approximately the same number as
> Safety-Kleen in terms of valuing what it was
> in the way of environmental liabilities that
> Clean Harbors would be assuming in this
> transaction, and our consultants were quite
> comfortable with that, as well. And Mr. McKim
> would remind the Court that this is the
> business of Clean Harbors, this is not --
> we're not a Johnny Come-Lately to hazardous
> waste business in evaluating these types of
> costs and these types of clean-up issues.

> So while there's no universal agreement on
> every single point between Safety-Kleen and
> Clean Harbors about these environmental
> liabilities, <u>there is generally no
> disagreement as to what types of liabilities
> we are assuming.</u> (Doc. # 5003, pp. 139:17-
> 140:7)(Emphasis added.)

Of course, on this point the Defendants make their judicial estoppel argument. I am not in the position at this time to conclude that judicial estoppel is applicable, but at trial, at a minimum, it may be appropriate for me to make a finding of fact that Clean Harbors agreed with the position stated by Mr. St. Clair regarding the Clean Harbors assumption of the Exhibit A liabilities.

As noted at the outset of this letter, subject to possibly some limited discovery, in light of the extensive record established to date, I believe that we could at an early date try this dispute, and probably do so in a few days. Of course, I am receptive to counsel's views on scheduling. I suggest that counsel confer and then communicate with chambers to obtain a hearing date for a status conference, at which time we can set a trial date.

Very truly yours,

Peter J. Walsh

PJW:ipm